UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
JACK DICKINSON,                         )      No. C06-1215RSL
                                        )
                    Plaintiff,          )      ORDER GRANTING DEFENDANT
          v.                            )      CITY OF KENT'S MOTION FOR
                                        )      SUMMARY JUDGMENT ON
THE CITY OF KENT, *et al.*,             )      MUNICIPAL LIABILITY
                                        )
                    Defendants.         )
_____)

## I.  INTRODUCTION

      This matter comes before the Court on "Defendant City of Kent's Motion for Summary Judgment" (Dkt. #35).  In its motion, defendant City of Kent (hereinafter the "City" or "defendant") requests dismissal of plaintiff's second cause of action for municipal liability because plaintiff has failed to show that defendant's policy, custom, or training practice caused the injury to plaintiff when he was bitten and pulled from a stolen pickup truck by defendant's police dog.  In response, plaintiff asserts that disputed issues of fact preclude summary judgment on municipal liability.  For the reasons set forth below, the Court grants defendant's motion for summary judgment.

## II.  DISCUSSION

### A.    Background

The Court previously set forth the facts of this case in the "Order Granting In Part and Denying In Part Individual Defendants' Motion for Summary Judgment Based on Qualified Immunity" (Dkt. #48).  For clarity in the record, the Court repeats these facts below.

The following facts are not in dispute.  On October 6, 2003, at approximately 7:00 p.m., plaintiff and Wendy Gabel were in a green pickup truck at a McDonald's in the City of Kent where they were contacted by two Kent police officers, Officer Wales and defendant Bourne. See Dkt. #22 (Bourne Decl.) at ¶4; Dkt. #28 (Dickinson Dep.) at 18:22-25.  Plaintiff was in the passenger seat of the truck and Ms. Gabel was in the driver's seat.  Id.  Plaintiff and Ms. Gabel were instructed not to drive because they appeared intoxicated.  Id.  About an hour later, defendant Bateman was dispatched to investigate a possible DUI call involving a stolen green pickup truck.  See Dkt. #22 (Bateman Decl.) at ¶3.  As officer Bateman responded, the truck turned into the parking lot of a 7-Eleven store in Kent.  See Dkt. #29 (Bateman Narrative) at 1; Dickinson Dep. at 12:19-24.  Defendant Bateman stopped the green pickup truck by driving his patrol car in front of it.  See Bateman Decl. at ¶5.  Defendant Bateman got out of his car and pointed his handgun at the cab of the truck.  See Bateman Narrative at 1; Dickinson Dep. at 24:6-8.  Officer Bateman instructed the driver of the pickup to throw the keys out the window. See Bateman Decl. at ¶7; Dickinson Dep. at 21:5-9.  During this time, plaintiff, who had been passed out in the passenger seat due to intoxication, woke up.  See Bateman Decl. at ¶7; Dickinson Dep. at 13:11; 20:22.  Plaintiff awoke still intoxicated and wrestled with Ms. Gable in the front of the truck for the keys.  See Bateman Decl. at ¶8; Dickinson Dep at 22:23-25; 25:2-13; 33:20-21.  Ms. Gable got out of the truck, but then attempted to return to the cab of the truck.  See Bateman Decl. at ¶¶9, 10; Dickinson Dep. at 24:15-18.  Defendants Ford and Henson

arrived at the incident.  See Bateman Decl. at ¶11.  When Ms. Gable was returning to the truck, defendant Henson pulled her to the ground and handcuffed her.  See Bateman Decl. at ¶11; Dickinson Dep. at 26:2-3.  Plaintiff was again ordered out of the truck.  See Dkt. #22 (Ford Decl.) at ¶6; Dickinson Dep. at 26:2-5.  Defendant Ford attempted to open the passenger door of the truck, but it was locked.  See Ford Decl. at ¶7; Dickinson Dep. at 28:8-10.  Plaintiff then reached for the passenger door lock.  See Bateman Decl. at ¶12; Dickinson Dep. at 26:13-14.  After plaintiff reached toward the lock, defendant Bateman opened the passenger door of the truck.  See Bateman Decl. at ¶12; Dickinson Dep. at 28:8-10.  After the door was open, defendant Ford sent police dog Jedi to extract plaintiff from the pickup.  See Ford Decl. at ¶10; Dickinson Dep. at 13:23-24.  Officer Bourne then arrived at the incident.  See Bourne Decl. at ¶6.  After police dog Jedi pulled plaintiff from the truck, plaintiff was handcuffed and taken to the hospital.  See Ford Decl. at ¶10; Dickinson Dep. at 30:10-12.  Plaintiff sustained puncture wounds on his leg at the time of the incident.  See Dkt. #28 (Ford Narrative) at 2.  In December 2003, plaintiff's leg was amputated below the knee.  See Dkt. #24 (Spiegler Decl.) at 6.

The following issues of material fact are in dispute:

a)  whether defendant Ford gave plaintiff a warning before releasing police dog Jedi; see Dickinson Dep. at 27:22-24 ("Q. Were you ever – or did you ever hear any warning that a dog was going to be released?  A.  No, there was no warning."); Bateman Decl. at ¶13 ("I acted as Officer Ford's cover agent as he gave additional warnings and then released the dog.");

b)  whether plaintiff was unlocking the passenger door of the truck or whether he was attempting to check to make sure the door was locked; see Ford Decl. at ¶7 ("Plaintiff then began fumbling with the door seemingly in an effort to make sure it was locked and he unlocked it instead."); Dickinson Dep. at 13:19 - 14:2 ("[T]hey were yelling at me to get out.  And I couldn't – I was trying to find the door lock, and then I just told them to f[] off because I was getting really irritated because I couldn't get out quick enough.  And the next thing I know is,

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON
MUNICIPAL LIABILITY

when I got the door unlocked, it flew up and the dog came in.  I remember it grabbed a hold of my leg and I was trying to get out at the same time.  The next thing I know is, I'm on the ground and the dog's still chewing on me and I'm trying to push him off.");

c)  whether it was raining at the time of the incident, thereby preventing the use of alternative means of force like OC spray; see Bateman Decl. at ¶18 ("Use of OC spray on Dickinson to gain compliance would have been ineffective as there was a driving rain storm occurring during this incident."); Dickinson Dep. at 27:25 - 28:4 ("Q.  When you say 'fairly clear,' was it raining?  A.  No.").

**B.   Discussion**

In a claim of excessive force caused by a police dog, the constitutionality of the force turns on the specific facts of the case.  Given the disputed issues of fact in this case, the Court previously concluded that the issue of whether the release of police dog Jedi without a warning violated plaintiff's Fourth Amendment rights was a jury question as to individual defendants Ford and Bateman.  See Dkt. #48.  Defendant now moves for summary judgment on plaintiff's second cause of action for municipal liability claiming that the City is not liable for plaintiff's injuries.  Defendant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Plaintiff filed his complaint under 28 U.S.C. § 1983.  See Dkt. #1 at ¶2.  Under § 1983, a municipality may be held liable only when the municipality inflicts an injury, and it may not be held liable on a theory of respondeat superior.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978).  "While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on the violation of constitutional rights."  Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994).  Defendant contends that its policy, custom, and

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON
MUNICIPAL LIABILITY

-4-

1   training practice did not cause plaintiff's injury.  Plaintiff, however, responds to defendant's

2   motion by contending that the City is liable based on:  (1) defendant's policy and custom; (2) the

3   Chief of Police's ratification of defendant Ford's and Jedi's actions; and (3) the City's

4   inadequate training of defendant Ford and Jedi.  See Response at 2, 21-22.  The Court addresses

5   these issues, in turn, below.

6          **1.**     **Policy Deficiencies**

7            **a.**     **Deadly force policy**

8        In its motion, defendant claims that its policy and custom did not cause plaintiff's injury.

9   See Motion at 11.  In his response, plaintiff contests this assertion by first contending that the

10  City's "deadly force" policy is deficient under the criteria set forth in Tennessee v. Garner, 471

11  U.S. 1, 3.  See Response at 19.  As defendant notes in its reply, however, plaintiff has failed to

12  "explain why Kent's deadly force policy is unconstitutional."[1]  See Reply at 6.  The Court

13  agrees.

14        In its order on defendants' motion for qualified immunity, the Court explained that there

15  was a triable issue on the reasonableness of the use of force in this case in part because there is a

16  disputed issue of fact on whether a warning was given before police dog Jedi was released.  See

17  Dkt. #48 at 8.  Defendant's deadly force policy is not deficient in this regard because it

18  expressly states that a warning is required before deadly force is used.  Section 1.3.2 of the

19  City's policy on "Limitations of Use of Deadly Force" states:  "When officers are about to use

20  deadly force, they will, when feasible, issue a verbal warning to the suspect."  See Dkt. #39, Ex.

21  3.  Accordingly, in light of the warning requirement in defendant's deadly force policy and

22  plaintiff's failure to articulate the deficiencies in the policy, the Court finds plaintiff's argument

23

24        [1]  This especially true given the Supreme Court's decision in Scott v. Harris, 127 S. Ct. 1769,

25  1777 (2007), where the Supreme Court held that "Garner did not establish a magical on/off switch that
triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'"

26  ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON
MUNICIPAL LIABILITY

1   under the rubric of "deadly force" unpersuasive in the context of defendant's motion for

2   summary judgment on municipal liability.[2]

3        **b.    K-9 policy**

4        In addition to the deadly force policy, plaintiff also contends that the City's K-9 policy is

5   deficient.  Section 1983 "imposes liability on a government that, under color of some official

6   policy, 'causes' an employee to violate another's constitutional rights."  Monell, 436 U.S. at

7   691.  A "City policy 'causes' an injury where it is the 'moving force' behind the constitutional

8   violation or where 'the city itself is the wrongdoer.'"  Watkins v. City of Oakland, 145 F.3d

9   1087, 1092 (9th Cir. 1998) (quoting Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994)).

10  Plaintiff needs to "show that the specific use of force . . . violated the Constitution, and that the

11  city policy caused the unconstitutional application of force in this instance."  Chew, 27 F.3d at

12  1444 n.12.

13       Plaintiff has raised a triable issue on whether defendants Henson and Bourne as

14  _____

15       [2]  In reaching this conclusion, the Court does not need to decide whether or not the use of Jedi

16  was an application of deadly force in this case. The Ninth Circuit has not determined as a matter of law
    whether the use of a police dog constitutes deadly force.  In Smith v. City of Hemet, 394 F.3d 689, 706

17  (9th Cir. 2005), the Ninth Circuit deferred ruling on this issue, stating: "We need not here determine
    whether the use of a police dog to subdue a suspect constitutes deadly force generally or the

18  circumstances under which such use might constitute such force.  Having announced the definition of
    'deadly force' we leave to the district court the first opportunity to apply the concept to the facts of this

19  case.  We note only that while we have not in any of our prior cases found that the use of police dog
    constituted deadly force, we have never stated that the use of such dogs cannot constitute such force."

20       Neither party in this case has definitively asserted that the use of Jedi was deployment of "deadly
    force."  In his response to defendant's motion for qualified immunity, plaintiff asserted that the use of

21  force in this case was "severe," but he did not contend that it was "deadly."  See Dkt. #23 at 16.  And, in
    any event, plaintiff's experts appear to contradict one another on the magnitude of the force.  Compare

22  Dkt. #25 (Heyen Decl.) at 6, § D ("A patrol dog deployed to apprehend a suspect is a use of force,

23  commonly categorized as an intermediate weapon, placed above open hand but is considered less force
    than an impact weapon (i.e. baton).") with Dkt. #24 (Spiegler Decl.) at 2, ¶2 ("I believe that the injuries

24  Jack Dickinson sustained when he was bitten by Kent Police Department canine, Jedi, threatened both his
    life and limb primarily because an untreated injury to the femoral artery can be fatal.").

25  ORDER GRANTING DEFENDANT'S MOTION
    FOR SUMMARY JUDGMENT ON

26  MUNICIPAL LIABILITY

individuals violated plaintiff's Fourth Amendment rights by failing to give a warning before Jedi was released to seize plaintiff.  See Dkt. #48.  Therefore, for purposes of defendant's motion for summary judgment on municipal liability, plaintiff has made a showing that a city employee violated plaintiff's Fourth Amendment rights.  The critical issue here is whether the City's K-9 policy caused the constitutional violation.

Plaintiff contends that the City's policy caused the injury because it "does not require an officer to give a warning before non-deadly force is used or before a police dog is deployed to find and bite a subject."  Response at 11; 20 ("The Kent use of force policy does not contain a warning requirement.").  In reply, however, the City contends that its policy is sufficient because it requires a warning:

> Here, Plaintiff was in an enclosed area – the interior of a stolen vehicle.  Kent's policy clearly states that a warning need be given under these circumstances. Plaintiff contends that a warning was not given, whereas Defendants indicate that a warning was given and Plaintiff was afforded one more chance to comply before K-9 Officer Jedi was released.  Whether or not a warning was given is not a material issue of fact with respect to municipal liability.  Detective Ford is required under Kent's K-9 policy to give suspects a warning before releasing a K-9.

Reply at 7-8.  The Court finds that the City's policy required a warning in this case and therefore it cannot be the "moving force" behind plaintiff's injury.  See Dkt. #39, Ex. 3 ("Prior to the search of any building or enclosed area, the handler gives a loud announcement of the intent to use the intent to use the police dog.  This announcement need not be given in circumstances where, to do so would endanger the safety of the canine team.").

The Court also concludes that the City's "Use of Force" policy cannot be considered the "moving force" behind plaintiff's injuries.  The policy states in part:

> Law enforcement officers often handle situations where control must be exercised to make arrests and to protect the public safety.  Control may be achieved through verbal persuasion, warnings, and the use of physical force. . . .  In all cases, officers will use the minimum force necessary to safely and effectively overcome the active resistance to arrest or to a lawful order, control a threatening situation, or defend themselves from harm.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON
MUNICIPAL LIABILITY

-7-

1  <u>See</u> Dkt. #39, Ex. 3 at § 1.3.1 (emphasis in original).  As this policy dictates, officers are

2  directed to use the <u>minimum force</u> necessary under the circumstances.

3     In summary, the City's policies directed the officers in this case to give plaintiff a

4  warning before releasing police dog Jedi and to use the minimum amount of force necessary.

5  Whether or not defendants Henson and Bourne as individuals are liable for plaintiff's injury is a

6  question for the jury.  <u>See</u> Dkt. #48.  But, given the policies in this case, the City cannot be held

7  responsible under a respondeat superior theory of liability for the actions of the individual

8  defendants.

9     **2.     Ratification**

10    In his complaint, plaintiff claims that it was the "policy of the City of Kent, by and

11 through its Chief of Police, to approve, acquiesce, condone and ratify the use of unreasonable

12 force in violation of the Fourth Amendment in the seizure and wounding of the Plaintiff[.]"  <u>See</u>

13 Dkt. #1 at ¶42.  Plaintiff clarifies this theory in his response by asserting that:

14          Defendant Ford authored a use of force report about the incident.  The Kent police
            department chain of command, up to and including the Chief, apparently reviewed
15          the report.  The report was apparently approved endorsing Ford's use of force in
            this case.  No discipline was imposed.  Accordingly, the City is liable under §1983
16          based upon the ratification of Ford's actions in this specific incident by the Chief
            of Police.

17 <u>See</u> Response at 21-22.  The basis for plaintiff's ratification theory of municipal liability

18 originated in <u>St. Louis v. Praprotnik</u>, 485 U.S. 112 (1988).  In <u>Praprotnik</u>, the Supreme Court's

19 plurality opinion stated that "[i]f the authorized policymakers approve a subordinate's decision

20 and the basis for it, their ratification would be chargeable to the municipality because their

21 decision is final."  <u>Id.</u> at 127.  In <u>Haugen v. Brosseau</u>, 351 F.3d 372 (9th Cir. 2003), <u>rev'd on</u>

22 <u>other grounds</u>,[3] 543 U.S. 194 (2004), however, the Ninth Circuit cautioned that this sentence

23

24        [3]  In <u>Brosseau v. Haugen</u>, the Supreme Court did not review the Ninth Circuit's affirmation of the
25 district court's dismissal of the municipal liability claim against the police department on summary

26 ORDER GRANTING DEFENDANT'S MOTION
   FOR SUMMARY JUDGMENT ON
   MUNICIPAL LIABILITY
                              -8-

from <u>Praprotnik</u> must be read in context, stating that "[a] single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under <u>Monell</u>, even though the decision is not intended to govern future situations, but the plaintiff must show that the triggering decision was the product of a conscious, affirmative choice to ratify the conduct in question."  <u>Id.</u> at 393 (citations and internal quotations omitted).  In affirming the district court's grant of summary judgment on municipal liability, the Ninth Circuit held that "[a]lthough some municipal pronouncements ratifying a subordinate's action could be tantamount to the announcement or confirmation of a policy for purposes of <u>Monell</u>, here there are no facts in the record that suggest that the <u>single failure to discipline</u> Haugen rises to the level of such a ratification."  <u>Id.</u> (citing <u>Santiago v. Fenton</u>, 891 F.2d 373, 382 (1st Cir. 1989) (refusing to hold that the "failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under <u>Monell</u>") (emphasis added)).  It is the same here.  As in <u>Haugen</u>, there are no facts in the record to suggest that the single failure to discipline defendant Ford rises to the level of ratification.  Although defendant does not contest the allegations regarding the failure to discipline, plaintiff has failed to show that the City made a "conscious, affirmative choice" to ratify the use of force against plaintiff by failing to discipline defendant Ford.  Accordingly, defendant is entitled to summary judgment on plaintiff's ratification theory.

### 3.    Failure to train

In his cause of action claiming municipal liability against the City, plaintiff does not specifically allege that his injuries were caused by the City's failure to train its employees.  <u>See</u> Dkt. #1.  However, in his response to defendant's motion, plaintiff now includes a theory of inadequate police training as part of his claim for municipal liability.  <u>See</u> Response at 22 ("The inadequacy of police training may serve as the basis for §1983 liability where the failure to train

judgment.  <u>See</u> <u>Brousseau</u>, 351 U.S. at 597 n.1.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON
MUNICIPAL LIABILITY

1   amounts to deliberate indifference to the rights of persons with whom the police come into

2   contact.") (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989)).  In support of this

3   argument, plaintiff claims that the City failed to train defendant Ford and Jedi:  "There is no

4   documentation here which demonstrates that Defendant Officer Ford, the police dog handler,

5   and Jedi were trained, maintained, or certified according to any patrol dog standards, including

6   Washington State standards (Washington State Police Canine Association)."  <u>Id.</u> at 22.

7       Plaintiff's claim for municipal liability based on a theory that the City failed to

8   adequately train defendant Ford and K-9 Jedi, however, fails as a matter of law.  Earlier this

9   year in <u>Blackenhorn v. City of Orange</u>, 485 F.3d 463 (9th Cir. 2007), the Ninth Circuit held that:

10          evidence of the failure to train a single officer is insufficient to establish a
            municipality's deliberate policy.  In <u>Alexander [v. City and County of San
11          Francisco</u>, 29 F.3d 1355, 1397 (9th Cir. 1994)] we held that an executor seeking to
            hold a municipality liable for the testator's shooing death during a police raid of
12          his home could not establish as a matter of law, solely on evidence of the
            municipality's failure to train only one officer, that the municipality had made the
13          "deliberate" or "conscious" choice required under <u>Canton</u>.  We explained that,
            absent evidence of a "program-wide inadequacy in training," any shortfall in a
14          single officer's training "can only be classified as negligence on the part of the
            municipal defendant – a much lower standard of fault than deliberate
15          indifference."

16  <u>Id.</u> at *53 (internal citation omitted).  In this case, plaintiff's claim is directed at the City's

17  alleged failure to train defendant Ford.  Furthermore, the Court notes that plaintiff's factual

18  contention, that defendant Ford and Jedi were not certified under WSPCA is incorrect.  The

19  record shows that defendant Ford and Jedi are in fact certified by the WSPCA as a patrol dog

20  team.  <u>See</u> Dkt. #41 (Gavery Decl.) at Ex. D.  Accordingly under <u>Blackenhorn</u>, defendant is

21  entitled to summary judgment on plaintiff's inadequate training theory.  <u>See</u> <u>Blackenhorn</u>, 485

22  F.3d at *54 ("Because Blackenhorn has limited his proof to the City's failure to train only

23  Nguyen, he did not meet his burden to withstand Defendants' motion for summary judgment.").

24                              **III.  CONCLUSION**

25       For all of the foregoing reasons, the Court GRANTS "Defendant City of Kent's Motion

26  ORDER GRANTING DEFENDANT'S MOTION
    FOR SUMMARY JUDGMENT ON
    MUNICIPAL LIABILITY

                                    -10-

1   for Summary Judgment" on municipal liability (Dkt. #35).[4]

2
3           DATED this 25th day of June, 2007.

4
5                                   *Robert S. Lasnik* (signature)
                                    Robert S. Lasnik
6                                   United States District Judge

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24      _____
        [4]  The City of Kent is not yet fully dismissed from the case, however, because plaintiff's third
25      cause of action is against the City for strict liability under RCW 16.08.040.  See Dkt #1 at ¶¶ 49-51.
        Defendant has not yet moved for summary judgment on this issue.
26      ORDER GRANTING DEFENDANT'S MOTION
        FOR SUMMARY JUDGMENT ON
        MUNICIPAL LIABILITY              -11-